IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

TODD GERONEMUS,

   Plaintiff,

-vs-

FIRST PREMIER BANK, a foreign corporation,

   Defendant.

_____/

CASE NO.:

**JURY TRIAL DEMANDED**

## COMPLAINT

The Plaintiff, TODD GERONEMUS, sues the Defendant, FIRST PREMIER BANK, and in support thereof respectfully alleges the following:

## JURISDICTION AND VENUE

1. Plaintiff brings this action to recover statutorily prescribed damages for acts on the part of Defendant FIRST PREMIER BANK, (hereafter "FIRST PREMIER), in violation of 47 U.S.C. § 227, *et seq.*, the Telephone Consumer Protection Act of 1991 (hereafter "TCPA") and the Florida Consumer Collection Practices Act, sections 559.55, *et seq.*, Florida Statutes (hereafter "FCCPA").

2. Jurisdiction of this Court arises under 28 U.S.C. § 1331 as this case presents a federal question, and supplemental jurisdiction under 28 U.S.C. § 1367 for related state law claims.

3. The alleged violations described herein occurred in Palm Beach County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## PARTIES

4. Plaintiff, TODD GERONEMUS, is and was at all material times a natural person over the age of eighteen (18), residing in Boca Raton, Palm Beach County, Florida.

5. Plaintiff TODD GERONEMUS is the "called party" with respect to the calls placed to his cellular telephone number, (###) ###-4957, as further described herein. See Soppet v. Enhanced Recovery Co., LLC, 679 F.3d 637, 643 (7th Cir. 2012); Breslow v. Wells Fargo Bank, N.A., 755 F.3d 1265, 1266, 1267 Communications Reg. (P & F) 934, (11th Cir.2014).

6. At all times material hereto, FIRST PREMIER was and is a foreign corporation, with its principal place of business at 601 S. Minnesota Ave, Sioux Fall, SD 57104-4824.

## FACTUAL ALLEGATIONS

7. At all times material hereto, Defendant FIRST PREMIER sought to collect an alleged credit card debt from Plaintiff that arose from a transaction allegedly incurred for personal, family or household purposes, and is therefore a "consumer debt" as that term is defined by section 559.55(6), Florida Statutes.

8. In or about March 3, 2017, Defendant, FIRST PREMIER began initiating a campaign of autodialed calls ("robocalls") to Plaintiff's cellular telephone number, (###) ###-4957, in an effort to collect the above described alleged debt.

9. In placing the calls at issue, Defendant engaged in "caller ID spoofing," which masked the telephone number from which the call was initiated, causing the Plaintiffs' caller IDs to reflect that the phone number of the incoming call was "unavailable" or "private."

10. On March 6, 2017, upon answering the second call from FIRST PREMIER, Plaintiff learned that the calls pertained to his credit card bill that was due on March 1, 2017.

Defendant's representative advised Plaintiff that his payment had not been received. Plaintiff advised Defendant's representative that he was out of state on business in California, and that he would submit payment for the bill as soon as he returned to Florida, and instructed Defendant's representative that he desired the calls from Defendant to cease immediately.

11. Despite Plaintiff's unambiguous instructions to the Defendant to stop calling, Defendant proceeded undeterred in its campaign of intentional harassment and abuse of the Plaintiff in an effort to collect the alleged debt, including but not limited to

   a. Calling Plaintiff's aforementioned cellular telephone number several times per day and on back to back days, with such frequency as can reasonably be expected to harass the Plaintiff, including as many as five (5) times per day, and twenty-six (26) times in a six (6) day period. In many instances, Defendant would place two (2) or more calls within minutes of each other.

   b. Calling Plaintiff's aforementioned cellular telephone number from an automated dialing telephone system and leaving pre-recorded messages on Plaintiff's voice mail box stating that the message was left in "an attempt to collect a debt";

   c. Calling Plaintiff's aforementioned cellular telephone number and hanging up either prior to or as soon as Plaintiff, or the Plaintiffs' voice mail system answered the call;

   d. Engaging in "caller ID spoofing" in an effort to provoke the Plaintiff to answer Defendant's debt collection calls. Defendant's "caller ID spoofing" caused the caller ID on Plaintiffs' aforementioned cellular telephone to identify misleading or inaccurate information about the source of the call, including by masking the telephone number from which the call was initiated, causing Plaintiff's caller ID to reflect that the phone number of the incoming call was "unavailable" or "private."

12. Despite Plaintiff instructing Defendant FIRST PREMIER to stop placing calls to his aforementioned cellular telephone number, Defendant FIRST PREMIER, in an effort to collect the above described alleged debt, proceeded to engage in conduct in violation of the TCPA and FCCPA, as described herein.

13. The telephone calls at issue were placed by Defendant FIRST PREMIER using an "automated telephone dialing system" as specified by the TCPA, 47 U.S.C. § 227(a)(1), which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers; and/or which has the capacity to dial numbers from a list without human intervention (hereafter "ATDS" or "autodialer").

14. Defendant FIRST PREMIER's use of an "automatic telephone dialing system" to place the calls at issue is evidenced by the fact that on at least some of the answered calls, Plaintiff was greeted by a brief period of unnatural silence and/or an audible click/beep prior to a live representative joining the line. These are telltale signs of a predictive dialer and an automated telephone dialing system.

15. To date, Plaintiff has received approximately fifty (50) calls from Defendant FIRST PREMIER on his aforementioned cellular telephone number.

16. Defendant FIRST PREMIER initiated each of the calls at issue to Plaintiff's aforementioned cellular telephone number without the "prior express consent" of Plaintiff as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

17. Alternatively, Defendant FIRST PREMIER initiated each of the calls at issue to Plaintiff's aforementioned cellular telephone number subsequent to Plaintiff's revocation of any "prior express consent" Plaintiff may have previously provided to Defendant, or that Defendant

mistakenly believed it had, as each of Plaintiff's instructions to cease placing the calls to his cellular telephone were ignored.

18. Additionally, none of the telephone calls at issue were placed by Defendant FIRST PREMIER to Plaintiff's aforementioned cellular telephone number for "emergency purposes" as specified by the TCPA, 47 U.S.C. §227 (b)(1)(A).

19. Defendant FIRST PREMIER consents of and has knowledge and control of the collection activities of its agents and representatives, including supervisors, managers, affiliates, subsidiaries, divisions, employees, servants, partners, agents, vendors, assignees, transferees, collectors and/or contractors with respect to the collection activity alleged herein.

20. Defendant FIRST PREMIER has a corporate policy of using an automatic telephone dialing system or a pre-recorded or artificial voice message, just as it did when calling the Plaintiff's aforementioned cellular telephone number, as described herein.

21. Defendant FIRST PREMIER willfully and/or knowingly violated the TCPA with respect to the Plaintiff.

22. Despite actual knowledge of its wrongdoing, Defendant FIRST PREMIER continued the campaign of harassment and abuse.

23. Defendant FIRST PREMIER's corporate policy is structured to continue to call individuals like the Plaintiff, despite these individuals requests to stop calling.

24. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge that the called parties did not provide prior express consent to receive the calls, or had revoked such prior express consent.

25. Defendant FIRST PREMIER's corporate policy provided no means for the Plaintiff to have his number removed from the call list.

26. Defendant FIRST PREMIER followed its corporate policies when attempting to communicate with the Plaintiff in an effort to collect the alleged debt described herein.

27. Defendant FIRST PREMIER has been the recipient of numerous complaints from debtors, alleged debtors, and non-debtors across the country, similar to those alleged in this action by Plaintiff.

28. Defendant FIRST PREMIER has, or should be in possession and/or control of call logs, account notes, auto dialer reports and/or other records that detail the exact number of calls made to Plaintiff over the relevant time period.

29. As a direct and proximate result of Defendant's acts or omissions, as set forth herein, Plaintiff has suffered compensatory, statutory and actual damages in the form of emotional distress, anxiety, fear, worry, embarrassment and mental suffering, pain, anguish, and loss of capacity for the enjoyment of life.

30. Plaintiff's statutory and actual damages in the form of emotional distress, anxiety, fear, worry, embarrassment and mental suffering, pain, anguish, and loss of capacity for the enjoyment of life pursuant to section 559.77, Florida Statutes, have continued and are continuing as of the filing of this complaint.

31. All conditions precedent to the filing of this action have occurred or have otherwise been waived

## COUNT I
## <u>VIOLATION OF THE TCPA AGAINST FIRST PREMIER</u>

32. Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs (1) through (31), as if fully set forth herein.

33. None of the calls at issue were placed by Defendant FIRST PREMIER to Plaintiff's aforementioned cellular telephone number with the "prior express consent" of Plaintiff, as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

34. Furthermore, Plaintiff revoked any "prior express consent" Defendant FIRST PREMIER had or mistakenly believed it had by verbally instructing Defendant on numerous occasions to stop placing calls to his aforementioned cellular telephone number.

35. Additionally, none of the calls at issue were placed by Defendant FIRST PREMIER to Plaintiff's aforementioned cellular telephone number for "emergency purposes" as specified by the TCPA, 47 U.S.C. §227 (b)(1)(A).

36. Defendant FIRST PREMIER willfully and/or knowingly violated the TCPA with respect to Plaintiff TODD GERONEMUS by repeatedly placing non-emergency calls to Plaintiff's aforementioned cellular telephone number using an automated telephone dialing system and/or prerecorded or artificial voice message without Plaintiff's prior express consent, and after Plaintiff instructed Defendant to discontinue calling Plaintiff, as specifically prohibited by the TCPA, 47 U.S.C. §227(b)(1)(A)(iii).

37. The TCPA provides Plaintiff with a private right of action against Defendant FIRST PREMIER for its violations of the TCPA, as described herein, pursuant to 47 U.S.C.A. § 227(b)(3), and permits both injunctive relief in addition to statutory damages.

WHEREFORE, Plaintiff TODD GERONEMUS respectfully demands judgment against Defendant FIRST PREMIER for statutory damages, actual damages, costs, interest, an injunction from further violations of these parts, and for such other relief as this Court deems just and proper.

## COUNT II
## VIOLATION OF THE FCCPA AGAINST FIRST PREMIER

38. Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs (1) through (31), as if fully set forth herein.

39. At all times material to this action Defendant FIRST PREMIER was and is subject to and must abide by the laws of Florida, including section 559.72, Florida Statutes.

40. Defendant FIRST PREMIER engaged in an act or omission prohibited under section 559.72(7), Florida Statutes, by willfully communicating with the Plaintiff or any member of his family with such frequency as can reasonably be expected to harass the Plaintiff.

41. Defendant FIRST PREMIER engaged in an act or omission prohibited under section 559.72(7), Florida Statutes, by willfully engaging in conduct which can reasonably be expected to abuse or harass the Plaintiff.

42. Defendant FIRST PREMIER engaged in an act or omission prohibited under section 559.72(9), Florida Statutes, by attempting to enforce a debt when such person knows that the debt is not legitimate, or asserting the existence of some other legal right when such person knows that the right does not exist.

43. The actions of Defendant FIRST PREMIER have directly and proximately resulted in Plaintiff's prior and continuing sustaining of damages as described by section 559.77, Florida Statutes, including, but not limited to: statutory damages, actual damages in the form of emotional

pain and suffering, fear, worry, embarrassment, humiliation and loss of the capacity for the enjoyment of life; and attorneys' fees, interest and costs.

WHEREFORE, Plaintiff respectfully demands judgment against Defendant FIRST PREMIER for statutory damages, actual damages, punitive damages, an injunction from similar conduct in the future, attorneys' fees, costs, interest and such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable.

Respectfully submitted,

*/s/David P. Mitchell*
David P. Mitchell, Esq.
Florida Bar No. 067249
MANEY & GORDON, P.A.
101 East Kennedy Blvd., Suite 3170
Tampa, Florida 33602
Telephone: (813) 221-1366
Fax: (813) 223-5920
David@MitchellConsumerLaw.com
Karin@MitchellConsumerLaw.com
Counsel for Plaintiff